# RECORD NOS. 15-1737(L); -1764

In The

# United States Court Of Appeals

## For The Fourth Circuit

**ALLSTATE INDEMNITY COMPANY,**

*Plaintiff – Appellee,*

v.

**PHILLIP R. BRYANT,**

*Defendant – Appellant.*

and

**LARRY J. OETTER,**

*Defendant.*

---

**ALLSTATE INDEMNITY COMPANY,**

*Plaintiff – Appellee,*

v.

**LARRY J. OETTER,**

*Defendant – Appellant.*

and

**PHILLIP R. BRYANT,**

*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT GREENVILLE**

---

# BRIEF OF APPELLANTS

---

| | | |
|---|---|---|
| Glenn A. Barfield | Evan G. Lewis | Jeffrey B. Kuykendal |
| HAITHCOCK, BARFIELD, HULSE | EVAN LEWIS, ATTORNEY | MCANGUS, GOUDELOCK |
| & KINSEY, PLLC | 225 North Respess Street | & COURIE, LLC |
| 231 East Walnut Street | P.O. Box 187 | 6302 Fairvew Road, Suite 700 |
| P.O. Drawer 7 | Washington, NC 27889 | P.O. Box 30307 |
| Goldsboro, NC 27530 | (252) 946-1897 | Charlotte, NC 28230 |
| (919) 735-6420 | | (704) 405-4575 |
| | | |
| *Counsel for Appellant* | *Counsel for Appellant* | *Counsel for Appellee* |
| *Phillip R. Bryant* | *Larry J. Oetter* | *Allstate Indemnity Company* |

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15:1737__          Caption: __Allstate Indemnity Company v. Phillip Bryant__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Phillip Bryant__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Glenn A. Barfield                      Date:    July 10, 2015

Counsel for: Appellant Phillip Bryant

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ July 10, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Glenn A. Barfield                                          July 10, 2015
        (signature)                                                  (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1737__    Caption: __Allstate Indemnity Co. v. Larry J. Oetter and Phillip R. Bryant__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Larry J. Oetter__
(name of party/amicus)

_____

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

4.　Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?　☑YES ☐NO
If yes, identify entity and nature of interest:

　　Appellee Allstate Indemnity Co.

5.　Is party a trade association? (amici curiae do not complete this question)　☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.　Does this case arise out of a bankruptcy proceeding?　☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Evan Lewis　　　　　　　　Date:　　July 14, 2015

Counsel for: Larry J. Oetter

## CERTIFICATE OF SERVICE
***************************

I certify that on　July 13, 2015　the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Glenn A. Barfield
Haithcock, Barfield, Hulse & Kinsey, PLLC
P.O. Drawer 7
Goldsboro, NC  27533-0007
barfield@hbhklaw.com
Counsel for Phillip R. Bryant

Jeffrey Kuykendahl
McAngus, Goudelock & Courie, PLLC
P.O. Box 30307
Charlotte, NC  28230-0307
jeffrey.kuykendahl@mcclaw.com
Counsel for Allstate Indemnity Co.

/s/ Evan Lewis　　　　　　　　　　　July 14, 2015
　　(signature)　　　　　　　　　　　　(date)

- 2 -

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................1

    STATEMENT OF THE FACTS ......................................................2

SUMMARY OF ARGUMENTS...........................................................6

ARGUMENT ...........................................................................................7

    STANDARD OF REVIEW ...........................................................7

I.    THE DISTRICT COURT ERRED IN HOLDING AS A
    MATTER OF LAW THAT THE BUSINESS PURSUITS
    EXCLUSION IN MR. OETTER'S HOMEOWNERS POLICY
    APPLIES TO EXCLUDE COVERAGE FOR MR. BRYANT'S
    INJURIES.........................................................................................7

II.    THE DISTRICT COURT ERRED IN FINDING AS A
    MATTER OF LAW THAT ALLSTATE HAD NOT WAIVED
    ANY RIGHT IT MAY HAVE HAD UNDER THE POLICY
    TO REFUSE TO DEFEND AND INDEMNIFY OETTER,
    AND WAS ESTOPPED FROM REFUSING TO DEFEND
    OETTER...........................................................................................14

CONCLUSION ......................................................................................16

REQUEST FOR ORAL ARGUMENT .................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Allstate Ins. Co. v. Chatterton*,
  135 N.C. App. 92, 518 S.E.2d 814 (1999) ....................................................8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505 (1986) ...........................................................7

*C. D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*,
  326 N.C. 133, 388 S.E.2d 557 (1990) ...........................................................8

*Early v. Farm Bureau Mut. Ins. Co.*,
  224 N.C. 172, 29 S.E.2d 558 (1944) ...........................................................15

*Erie Ins. Exch. v. St. Stephen's Episcopal Church*,
  153 N.C. App. 709, 570 S.E.2d 763, *disc. rev. denied*,
  351 N.C. 350, 542 S.E.2d 205 (2000) ...........................................................8

*Erie Ins. Exch. v. Szamatowicz*,
  164 N.C. App. 748, 597 S.E.2d 136 (2004) .........................................12, 13

*Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Invs., LLC*,
  2012 WL 4191383 (E.D. N.C. Sept. 19, 2012) ............................................14

*National Mut. Fire Ins. Co. v. Grady*,
  130 N.C. App. 292, 502 S.E.2d 648 (1998) .......................................9, 10, 11

*Nationwide Mut. Fire Ins. Co. v. Nunn*,
  114 N.C. App. 604, 442 S.E.2d 340 (1994) ............................................9, 10

**Statutes:**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1332 ........................................................................................1

**Rule:**

Fed. R. Civ. P. 56 ......................................................................................7

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. On June 9, 2015, the District Court entered an order granting summary judgment for Allstate. JA 232.  Mr. Bryant timely appealed to this Court on July 1, 2015. Mr. Oetter timely appealed to this Court on July 9, 2015. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.   Did the district court err in granting summary judgment for Plaintiff-Appellee Allstate on the basis that coverage for Mr. Bryant's injuries under the policy is excluded as having arisen from or in connection with a business engaged in by Defendant-Appellant Oetter?

II.  Did the district court err in finding as a matter of law that Allstate had not waived any right it may have had under the policy to refuse to defend and indemnify Oetter, and was estopped from refusing to defend Oetter

## STATEMENT OF THE CASE

On April 3, 2013 Defendant-Appellant Bryant commenced a civil action against Defendant-Appellant Oetter in Wayne County Superior Court, seeking to recover damages resulting from his having been mauled by a dog alleged to have been kept, maintained or owned by Oetter. Allstate had issued a homeowners

1

insurance policy to Oetter. JA 7 (Complaint, ¶¶ 7-8), JA 11-78 (Exh. A to Complaint). On May 16, 2014 Allstate brought the present action, seeking a judgment declaring that it has no obligation under the policy to defend or indemnify Oetter in in the state court action. JA 6-86 (Complaint). On February 13, 2015, Allstate moved for summary judgment contending that coverage for Bryant's state court claims was excluded under the policy. JA 96-99. On June 9, 2015, the District Court entered an order granting summary judgment for Allstate, JA 232-240, and entered judgment accordingly, JA 241. On July 1, 2015 Mr. Bryant timely appealed to this Court. JA 242-43. On July 9, 2015 Mr. Oetter timely appealed to this Court. JA 33.

STATEMENT OF THE FACTS

On 9 November 2010, defendant Phillip R. Bryant was bitten by a dog ("Buddy") on the premises of Superior Carriers, Inc. ("Superior"). JA 106 (Oetter Dep., at 182); JA 117, 120 (Bryant Dep., at 43, 46); JA 220 (Oetter Dep., at 28). At that time, Bryant was working for Superior as a driver. JA 112 (Bryant Dep., at 15); JA 211 (Bryant Dep., at 14). He had just completed a trip and returned to Superior's premises to drop off an empty trailer. JA 117-18 (Bryant Dep., at 43-44). After completing some paperwork in the truck, Bryant began walking across the parking lot with another driver towards the office. JA 119-20 (*Id.* at 45-46.) Around this same time, defendant Larry J. Oetter, who was working full-time as

2

Superior's terminal manager at the time, was playing fetch with Buddy in the parking lot. JA 101-02, 106-07 (Oetter Dep., at 16, 17, 21, 22); JA 153-56 (Oetter Dep., at 101-10). As Oetter and Bryant walked towards each other, Buddy bit Bryant. JA 120 (Bryant Dep., at 46); see also JA 159, 165-70 (Oetter Dep., at 113, 119-24).

Prior to the incident, Buddy had been staying at Superior's premises for several months, having wandered there and apparently a stray. JA 111 (Bryant Dep., at 12); JA 210 (Bryant Dep., at 13); JA 103 (Oetter Dep., at 24-26). Several Superior employees, including Oetter, cared for Buddy by supplying him with a collar, feeding him, walking him, and taking him to the veterinarian. JA 104 (Oetter Dep., at 25); JA 136-37, 148 (Oetter Dep., at 67-68, 79). Keeping Buddy was not one of Oetter's job duties. JA 181 (Oetter Dep., at 147). On occasion, Oetter went to Superior's premises, even though he was off duty, to care for Buddy. JA 107 (Oetter Dep., at 184.) Buddy did not serve as a security dog for Superior or any other purpose of the company. JA 181 (Oetter Dep., at 147).

At the time of the dog bite incident, plaintiff had issued to Oetter, as a named insured, a homeowners' policy of insurance, number 9 35 470035 08/20 (the "Policy"). JA 7 (Compl., ¶¶ 7-8); JA 91 (Oetter Ans., ¶¶ 7-8). In April 2013, Bryant filed suit against Oetter in North Carolina state court, asserting claims for negligence and gross negligence for injuries related to the dog bite. JA 81 (Bryant

Complaint). Bryant alleged that Oetter, as terminal manager, was in charge of the premises and that he had kept and maintained the dog at that location. JA 81 (*Id.* ¶¶ 5-6). Oetter, in turn, made a claim with plaintiff to defend him in Bryant's state action and to indemnify him for any damages sought or obtained by Bryant. JA 8 (Allstate Complaint, ¶¶ 19-20); JA 88 (Oetter Ans., ¶¶ 19-20). In 2014, plaintiff filed this action seeking a declaratory judgment that it is not obligated to so defend or indemnify Oetter.

Oetter's Allstate Deluxe Homeowner's Policy provides coverage for his personal liability for damages for bodily injury. JA 63 (Homeowner's policy, Coverage E). The original policy excluded coverage of damages for:

> 2.   **Business**
>
>     a.    **Bodily Injury** or **Property Damage** arising out of or in connection with a **business** conducted from an **insured location** or engaged in by an **insured** whether or not the **business** is owned or operated by an **insured** or employs an **insured**.
>
>     This Exclusion E.2. applies but is not limited to an act or omission regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

JA 65.

The policy as originally written includes the following definition of "**Business**":

3.    **Business** means:

a) a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis; or b) any other activity engaged in for money or other compensation, except the following:

(1) one or more activities, not described in (2) through (4) below, for which no **Insured** receives more than $2,000 in total compensation for the 12 months before the beginning of the policy.;

(2) volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

(3) providing home daycare services for which in no compensation is received, other than the mutual exchange of such services; or

(4) the rendering of home daycare services to a relative of an **Insured**.

JA 44.

Under a **Policy Endorsement**, providing that "*The following endorsement changes your policy*" the business exclusion is restated in the following terms:

**Business**

a) **Bodily Injury** or **Property Damage** arising out of or in connection with a **business** engaged in by an insured.

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

JA 39.

5

The same Policy Endorsement changes the definition of business to the following: "Business includes any full – or part – time activity of any kind engaged in for economic gain, including the use of any part of any premises for such purposes." JA 32.

## SUMMARY OF ARGUMENTS

First, under the definition of "business" substituted by endorsement into Oetter's homeowner's insurance policy, coverage for bodily injury is not excluded under the business pursuits exclusion, unless the specific activity being negligently engaged in by the insured was engaged in for economic gain. The specific activity in which Mr. Oetter was engaged was playing fetch with the dog who bit Bryant. This was not an activity done for economic gain, but rather his own private purpose in keeping and playing with Buddy. Thus, Mr. Bryant's injuries did not arise out of or in connection with any "business" of Oetter. Therefore, Allstate's motion for summary judgment based on the business pursuits exclusion in Mr. Oetter's policy should have been denied.

Second, both the issues of whether Allstate unreasonably mislead Oetter about its reservation of rights by omitting the reservation of rights language from its prior and subsequent communications with him, and whether Allstate affirmatively misrepresented to Oetter the true meaning of the reservation of rights

language it did send him are material issues of fact that the district court should not have decided on summary judgment.

## ARGUMENT

STANDARD OF REVIEW

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). In determining whether summary judgment is proper, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

I.   THE DISTRICT COURT ERRED IN HOLDING AS A MATTER OF LAW THAT THE BUSINESS PURSUITS EXCLUSION IN MR. OETTER'S HOMEOWNERS POLICY APPLIES TO EXCLUDE COVERAGE FOR MR. BRYANT'S INJURIES.

The Court is here called upon interpret the terms of Mr. Oetter's home owner's insurance policy.

> As we noted under similar circumstances in *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986), "[r]esolution of [an insurance policy's scope] involves construing the language of the coverage . . . and determining whether events as alleged in the pleadings and papers before the court are covered by the policies. As such, it is an appropriate subject for

7

summary judgment." *See also Kessing v. Mortgage Corp.*, 278 N.C. 523, 535, 180 S.E.2d 823, 830 (1971).

*C. D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 141, 388 S.E.2d 557, 562, 1990 N.C. LEXIS 16, 16 (N.C. 1990).

> In determining coverage issues, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction. . . . [T]he policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written."

*Erie Ins. Exch. v. St. Stephen's Episcopal Church*, 153 N.C. App. 709, 711-12, 570 S.E.2d 763, 765, *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000) (alterations in original) (quoting *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 816 (1999)), *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000).

> Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.

*C. D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563, 1990 N.C. LEXIS 16, 18-19 (N.C. 1990).

8

Allstate contends that the business exclusion in Oetter homeowner's policy applies to exclude coverage for Oetter's negligence in keeping or failing to restrain his dangerous dog. Allstate contends that Mr. Oetter's employment by Superior Carriers was a "business" and that Mr. Bryant's injuries were sustained "in connection with" that "business". However, Allstate's argument fails to recognize that where a policy endorsement changes the policy, the effect of the substituted definition of "business" cannot be read as having the same meaning as the definition it replaced.

Allstate will concede that the appellate courts of North Carolina have never interpreted or construed the definition of "business" set forth in the policy endorsement at issue here. However, Allstate argues that this Court should assume that the North Carolina Supreme Court, if presented with the question, would read the definition of "business" as stated in the endorsement as having the exact same meaning as the policy language it replaces. Thus, Allstate argues that two decisions of the North Carolina Court of Appeals, which interpreted the original policy definition, should control. *Nationwide Mut. Fire Ins. Co. v. Nunn*, 114 N.C. App. 604, 442 S.E.2d 340 (1994) and *National Mut. Fire Ins. Co. v. Grady*, 130 N.C. App. 292, 502 S.E.2d 648 (1998). The central holding in these two cases is that where the insured would not be on the premises but for the insured's

employment, every injury occurring on those premises occurs "in connection with" the employment.

In both cases, however the North Carolina Court of Appeals was interpreting the definition of "business" which was replaced by the endorsement to Oetter's policy at issue here ("'Business' is defined in the policy to include 'trade, profession, or occupation'." *Nationwide v. Grady*, 292 N.C. App at 296, 502 S.E.2d at 652; "The insurance policy sets out the following definition: 'business' includes trade, profession, or occupation'." *Nationwide v. Nunn*, 114 N.C. App 606; 442 S.E.2d at 342). The District Court failed to address or acknowledge the differences between the provisions stating the business exclusion in the present case and those construed by the North Carolina Court of Appeals in *Nunn* and *Grady*.

The most salient difference between the definition interpreted in those cases, and the definition substituted into the policy at issue, is the elimination of the clause "a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis." from the definition of "business".  In *Grady*, the workplace case Allstate most heavily relies upon, the court's construction of the prior version of the business exclusion depended directly on that phrase.  "Indeed, but for his job with the Revenue Department, Grady and Metts would not have been on the premises of the Revenue Department and the tort claim would not have arisen.

10

Grady's argument to the contrary fails". *Grady, supra* at 130 N.C. App. 292, 297, 502 S.E.2d 648, 652. The elimination of the clause "a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis." from the definition of "business"

Where in construction of an insurance policy "every word and every provision is to be given effect," the elimination of the clause "a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis" from the definition of "business" must be given some meaning, or the endorsement would not have the effect of changing the policy.

The only reasonable and sensible way of understanding the effect of that deletion is that the policy no longer excludes from coverage injury arising out of or in connection with an insured's trade, profession or occupation <u>generally</u>, and instead excludes bodily injury arising out of or in connection with a <u>specific activity</u>, "engaged in for economic gain."

Unquestionably the language used in the substituted definition and substituted exclusion is reasonably susceptible to this interpretation, for it is the only interpretation that reasonably accounts for the difference between the original definition and the substituted definition. This construction of the substituted definition, and the elimination of the phrase "a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis" from the definition of

"business", reflects today's employment practices, where an insured's workplace might be anywhere, including his or her home, or anywhere an internet connection is available.

It is undisputed that when Oetter was playing fetch with his unrestrained pit bull terrier, by which specific activity Oetter negligently exposed Bryant to attack by Buddy, he was not engaged in any purpose of Superior Carriers, and was not playing fetch for economic gain. Indeed in playing fetch with Buddy he was engaged in an activity often done at home, and in parks, and on beaches. Allstate will not contend that the business exclusion would apply in those instances. There is no logical reason it should apply merely because Oetter happened to be on the premises of his employer, premises he entered on some occasions merely to feed Buddy or to care for his needs.

In *Erie Ins. Exch. v. Szamatowicz*, 164 N.C. 748, 597 S.E.2d 136 (2004), the North Carolina Court of Appeals considered whether damages for injuries sustained by guests during a party held at a warehouse subleased by an insured were covered under his homeowners policy. As to the business pursuits exclusion the Court of Appeals held that because there was no evidence the insured had ever used the warehouse for any business purpose the exclusion was inapplicable. *Id*., at 754. The Court of Appeals also considered whether the warehouse was "used by [the insured] in connection with" his residence, and so was an "insured location".

12

*Id.*, at 752-753. Here the Court of Appeals focused on the activity, which was throwing a birthday party. The Court of Appeals noted that this was an activity "that normally would have taken place at his residence", and for that reason the warehouse was an insured location. *Id*. Like playing fetch with a dog, throwing a birthday party might be done at any number of places in addition to a home, and it is the activity that counts most.

This Court should hold that, since the negligent activity in which Mr. Oetter was engaged was not done for his economic gain, but was instead an activity one might normally engage in at home or at other covered locations, Mr. Bryant's injuries did not arise out of, or in connection with a "business" of Mr. Oetter, under the replacement definition of that term stated in the endorsement. Under that definition of "business", coverage for bodily injury is not excluded under the business pursuits exclusion unless the specific activity being negligently engaged in by the insured was being engaged in for economic gain.  As the specific activities in which Mr. Oetter was engaged were not done for economic gain, but rather his own private purpose in keeping and playing with Buddy, Mr. Bryant's injuries did not arise out of or in connection with any "business" of Oetter. Therefore Allstate's motion for summary judgment based on the business pursuits exclusion in Mr. Oetter's policy should have been denied.

13

II.    THE DISTRICT COURT ERRED IN FINDING AS A MATTER OF LAW THAT ALLSTATE HAD NOT WAIVED ANY RIGHT IT MAY HAVE HAD UNDER THE POLICY TO REFUSE TO DEFEND AND INDEMNIFY OETTER, AND WAS NOT ESTOPPED FROM REFUSING TO DEFEND OETTER.

The Court below correctly notes that *Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Invs., LLC*, No. 7:11-CV-59-D, 2012 WL 4191383 (E.D. N.C. Sept. 19, 2012) states North Carolina's exception to the general prohibition of an insured's use of waiver and estoppel to broaden an insurance policy's coverage, which applies when the insurer defends the insured without a reservation of rights and the denial results in prejudice.  JA 238 (Order, at 7).

Allstate responded to these arguments below that Oetter cited no case law supporting his position that an insurance company's reservation of rights stated in one communication can become so degraded and ineffectual to advise the insured of his true position when combined with other numerous prior and subsequent communications to an insured that do not include a reservation of rights that it, in effect, is no meaningful reservation of rights at all. However, neither the Court below nor Allstate cite any case law to the contrary.  Oetter here asserts only the common sense notion that a reservation of rights must be meaningful in context to the insured to be effective in avoiding a waiver or estoppel claim.

Allstate further asserts that it is "impractical and unwarranted" to expect Allstate to repeat its reservation of rights in every email, letter and telephone

14

conversation with an insured. *Id.* It does not explain why it could not cheaply and simply do so through the use of appropriate templates, macros and telephone scripts. Such costs would clearly be less than the value of the clarity such practices would provide to Allstate's insureds.

Moreover, the Court incorrectly found that ". . . Oetter does not state that anyone on behalf of [Allstate] represented to him that the policy afforded coverage for the claim." JA 239 (Order, at 8). On the contrary, Oetter plainly alleges that he discussed the meaning of the reservation of rights letter that he received from Allstate with an Allstate agent or employee and was advised that that language meant that Allstate would pay for his defense to Bryant's claims, but may not pay any damage or settlement. JA 213 (Affidavit of Larry J. Oetter, at 1).

North Carolina law is clear that being deprived of the right to control his own lawsuit is sufficient prejudice to the insured to satisfy that prong of the waiver and estoppel doctrines. *Early v. Farm Bureau Mut. Ins. Co.*, 224 N.C. 172, 174, 29 S.E.2d 558, 559 (1944).

Therefore, both the issue of whether on these facts Allstate unreasonably mislead Oetter about its reservation of rights by omitting the reservation of rights language from its prior and later communications with him, and whether an Allstate agent or employee affirmatively misrepresented to Oetter the true meaning

15

of the reservation of rights language it did send him are material issues of fact that the Court below should not have decided on summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court and remand for further proceedings.

## ORAL ARGUMENT REQUEST

Defendant-Appellants respectfully request oral argument.

Respectfully submitted,

By: /s/ Glenn A. Barfield
Glenn A. Barfield
HAITHCOCK, BARFIELD, HULSE
  & KINSEY, PLLC
P.O. Drawer 7
231 East Walnut Street
Goldsboro, NC  27530
(919) 735-6420

By: /s/ Evan Lewis
Evan G. Lewis
EVAN LEWIS, ATTORNEY
P.O. Box 187
225 North Respess Street
Washington, NC  27889
(252) 946-1897

*Counsel for Appellant*
  *Phillip R. Bryant*

*Counsel for Appellant*
  *Larry J. Oetter*

Dated:    August 18, 2015
           Goldsboro, NC

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>3,611</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated:  August 18, 2015        <u>/s/ Glenn A. Barfield</u>
                               Glenn A. Barfield

                               *Counsel for Appellant*
                                 *Phillip R. Bryant*

                               <u>/s/ Evan Lewis</u>
                               Evan G. Lewis

                               *Counsel for Appellant*
                                 *Larry J. Oetter*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on August 18, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219